IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR132 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| JAMES EDWARD GREER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant James Edward Greer's ("Greer") objection, Filing No. 37, to the Report and Recommendation ("R&R") of the United States magistrate judge, Filing No. 32, recommending denial of defendant's motion to suppress, Filing No. 19.  Defendant is charged with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g), and with one count of forfeiture of the firearm under 18 U.S.C. 924(d).  Defendant seeks suppression of all evidence found as a result of the search of his residence on January 27, 2008.  Specifically, he contends that the search of his residence violated his rights under the Fourth Amendment to the United States Constitution.

Pursuant to 28 U.S.C. § 636(b)(1), the court has conducted a *de novo* determination of those portions of the R&R to which the defendant objects. *United States v. Lothridge, 324 F.3d 599, 600-01 (8th Cir. 2003)*.  The court has reviewed the entire record including the transcript of the hearing held on May 22, 2008, Filing No. 31 ("Hr'g Tr."), and the relevant case law.  For the reasons set forth below, the court finds Greer's objection to the

magistrate judge's findings should be overruled, the R&R of the magistrate judge should be adopted, and defendant's motion to suppress should be denied.

## FACTS

The court generally accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to this court's findings. On January 27, 2008, Officer Joseph E. Baudler ("Baudler") of the Omaha Police Department received a call from a confidential informant ("CI"), indicating that Annette Smiley ("Smiley"), an individual with an outstanding misdemeanor warrant, was at a residence located on North 44th Avenue in Omaha. Further, the CI informed Officer Baudler that the residence was being used as a "possible" crack house and that the Greer brothers were selling crack out of the house.

With that information, Officers Baudler and Nicholas Muller ("Muller") obtained photographs of Annette Smiley, James Greer, and his brother, Eddie Greer. With the assistance of three other officers, they proceeded to the address. They arrived around 9:30 p.m. Officers Baudler and Muller proceeded to the front porch while the other officers went to various locations around the house for officer safety. As Officers Baudler and Muller approached the front steps of the porch, they detected the odor of burnt marijuana. Officer Baudler testified that he knocked on the porch door a couple of times before the defendant, Greer, came through the front door of the house onto the porch area. Officer Baudler testified that as the defendant came out of the house, he left the front door open. The defendant walked across the porch, opened the porch door, and permitted Officers

Baudler and Muller to enter onto the porch area, where Officer Baudler explained to the defendant that they were looking for a fugitive.[1]

From where Officer Baudler was standing, in the corner of the porch, he looked through the open front door into the living room and observed Smiley sitting on the couch. Officer Baudler recognized her from the photographs they had obtained prior to arriving at the residence. Having seen Smiley, Officer Baudler entered the residence to arrest Smiley. As Officers Baudler and Muller entered the residence to arrest Smiley, they observed a burnt marijuana cigarette in an ashtray in the living room. The other officers secured the residence by bringing everybody in the residence into the living room.

At that point, Officer Baudler took the defendant aside and asked whether or not they could search the residence, which the defendant leased. The defendant's brother arrived at the house shortly thereafter. The defendant was given an opportunity to speak to his brother. After speaking to his brother, the defendant said that he would allow the officers to search. After he verbally consented to the search, he signed a consent to search form. Although the first consent form was misplaced, the defendant signed a subsequent consent to search form.[2] During a search of the bedroom, Officer Muller and Sergeant Thomas H. Shaffer found a coat in the closet, which apparently belonged to the defendant. In the coat, Officers Muller and Shaffer found a Cricket phone bill in the name of the defendant and the firearm which is in issue in Count I of this indictment.

---

[1] The record is not clear as to when the officers stepped onto the porch; however, it is clear they stepped up sometime after Greer opened the porch door.

[2] At some point during the search, the first consent form was misplaced by Officer Baudler and the defendant, Greer, signed a second consent to search form.

**DISCUSSION**

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. Under the Fourth Amendment, "searches conducted without a warrant issued upon probable cause are presumptively unreasonable, subject to a few specifically established exceptions." *United States v. Escobar*, 389 F.3d 781, 784 (8th Cir. 2004). "Consent to search is one such exception." *Id*.

Defendant first argues that the officers did not receive consent to enter the premises or to come up onto the porch. The magistrate judge found that the officers legitimately entered the porch area. Hr'g Tr. at 100. Officer Baudler testified that the defendant opened the porch door and then Officers Baudler and Muller stepped onto the porch. Hr'g Tr. at 41. Officer Baudler also testified that the defendant did not object to them stepping onto the porch. *Id.* An invitation or consent to enter a house may be implied as well as expressed. *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975). The Eighth Circuit has held that nearly identical actions constitute implied consent to an entry. In *Turbyfill*, the court held that the opening of the door and stepping back by a third party implied invitation to enter. *Id.* Therefore, the court finds there was no error in the determination that the action of the defendant in the opening of the door and stepping back constituted an implied invitation to enter. *Id.*

From Officer Baudler's vantage point on the porch and through the door which the defendant left open, Officer Baudler was able to view Smiley inside the house. The court finds the entry of the officers to arrest Smiley was lawful. Once in the house, the officers observed a burnt marijuana cigarette in an ashtray in the living room. The Supreme Court

has clearly stated: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. Therefore, the court finds the marijuana cigarette was in plain view of the officers.

After the arrest of Smiley and the observation of a burnt marijuana cigarette, the officers took the defendant aside and asked if he would give them permission to search the house. Officers may search an area or an object if they obtain voluntary consent from someone possessing authority over that area or object. *United States v Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990). In determining whether consent was voluntarily given, we look at the totality of the circumstances. *Id.* Consent is voluntary "if it was the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied." *Id.*

After speaking to his brother, the defendant asked the officers if they would obtain a search warrant if he did not consent. The officers stated that they would apply for a search warrant if he did not consent. After hearing their answer, the defendant verbally consented to the search and also signed a consent to search form. The Eighth Circuit has found that when a person consents to a search after officers state they will attempt to obtain a warrant if the person does not consent, the consent is not necessarily coerced. *United States v. Larson*, 978 F.2d 1021, 1024 (8th Cir. 1992) (when the officers asked for permission to search, defendant's mother stated, "You will probably get a search warrant anyway." The officers agreed that they probably would. Defendant's mother then read and signed a consent form.). Instead, an officer's threat to obtain a search warrant is a factor to be considered when examining the totality of the circumstances surrounding consent.

*Id.* The court has reviewed the record and finds no threats or coercive behavior. In fact, defendant raised the issue, not the police officers. Consequently, the court finds that the defendant consented to the search. As a result of the consent, no search warrant was necessary in this matter.

Defendant argues that the amount of conflicting testimony challenges the officers' credibility and veracity. Specifically, Officers Baudler, Muller and Shaffer all had conflicting accounts of, or do not remember, when the defendant was handcuffed, and there was conflicting testimony between Officers Baudler and Shaffer as to where the defendant was when he spoke to his brother, Edward. The magistrate judge found the testimonies of Officers Muller, Baudler, and Shaffer to be credible. The court has reviewed the transcript of the hearing and gives due regard to the magistrate judge's findings. Accordingly, the court finds that these conflicts are minimal and that the testimonies given by Officers Muller, Baudler, and Shaffer are credible and accurate.

Defendant also argues that the officers had an ulterior motive to check out this "possible" crack house. The magistrate judge found that even if they did have an ulterior motive to check out the allegations of the crack house, that does not depreciate from the lawfulness of their arrest of Smiley. " 'The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed.2d 89 (1996) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed2d 167 (1978) (in general, police officer's ulterior motives for making a stop are irrelevant so long as there is probable cause to believe a traffic violation has occurred).

The court has reviewed the record finds that the officers were legitimately at the residence to effect an arrest warrant and given the circumstances presented to them, they could lawfully proceed with a further investigation of the matter.

THEREFORE, IT IS ORDERED:

1. The defendant's motion to suppress, Filing No. 19, is denied.

2. The defendant's objections, Filing No. 37, are overruled.

3. The report and recommendation of the magistrate judge, Filing No. 32, is accepted as set forth herein.

DATED this 7th day of August, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge